# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**MARC ELLIOTT HENSLEY (# 105070)**                          **PETITIONER**

**v.**                                                                                         **No. 2:06CV189-P-A**

**SUPERINTENDENT RONALD KING, ET AL.**                     **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Marc Elliott Hensley for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered the petition, and the petitioner has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be dismissed with prejudice.

### Facts and Procedural Posture

The petitioner is in the custody of the Mississippi Department of Corrections and is currently housed at the Carroll-Montgomery County/Regional Correctional Facility in Vaiden, Mississippi. He was convicted of sexual battery in the Circuit Court of DeSoto County, Mississippi, and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections with five years suspended. State Court Record ("S.C.R."), Vol.1, pg. 118.

He appealed the conviction and sentence to the Mississippi Court of Appeals citing as error (as stated by the petitioner through counsel):

A.      The Court erred in denying the defendant's motion to sever Counts 1 and 3.

B.      The Court erred in denying the defendant's Motion to Dismiss at the close of the State's case and in denying jury instruction No. D-1, the [per]emptory challenge. The State failed to prove jurisdiction and venue.

The court of appeals affirmed the petitioner's conviction and sentence. *Hensley v. State*, 912 So.

2d 1083 (Miss. App. 2005) (Cause No. 2004-KA-01410-COA). Hensley then filed a petition for post-conviction collateral relief ("PCR") in the Mississippi Supreme Court citing as error:[1]

    A.    Ineffective Assistance of Counsel:

        1.    Trial counsel['s] failure to investigated the charges and witnesses against him in preparation for trial and sentencing.

        2.    Trial counsel allowing suppression of material impeachment evidence, particularly of key state witnesses can require reversal of conviction or vacating of sentence.

        3.    Trial counsel not having adequate time or taking such to prepare defense.

        4.    Trial counsel['s] refusal to call to stand witnesses for his defense.

        5.    Trial counsel['s] refusal to call subpoenaed expert witness Dr. Lance Whaley, M.D.

        6.    Trial court and counsel denied petitioner the fundamental right of attendance; that is his due process right to attend any proceeding which the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."

        7.    Multiple deficiencies in trial counsel[']s performance concerning loya[lty], conflicts of interest, and to advocated defendants cause.

        8.    Trial counsel through plain error did not rise in his role to an adversarial level in defense strategy.

        9.    Trial counsel failed to prepare a[] proper defense [o]n behalf of his client.

        10.    Trial counsel failed to properly render jury instructions, so much so that the only one jury instruction proffered by trial counsel was refused by the court.

        11.    Trial counsel failed in his duty to present substantial mitigating evidence [o]n his client[']s behalf, both at trial and at sentencing.

---

[1] In the interest of clarity, the court has summarized the general headings, while reproducing the petitioner's specific claims under each heading as they appeared in his original filing. The court has also omitted the various legal citations originally included with each claim.

B. Plain Error[2]

1. Trial counsel failed to call witnesses that were sub[poenaed] by defense and were on hand to be called.

2. Trial counsel also did not produce other witnesses, i.e. police officers to the stand in an effort to try and rebut some or most of Officer Bradley's testimony concerning arrest and statement supposedly made by defendant at the time of arrest.

3. Trial counsel's failure to call to the stand, an expert witness, Dr. Lance Whaley, M.D. is inexcusable.

4. It is trial error or plain error committed during the jury instructions stage that Hensley was not present for this.

5. Trial judge made a serious error after conviction during polling of the jury which was requested by defense counsel.

On August 30, 2006, the Mississippi Supreme Court denied Hensley's petition, holding that "Hensley fails to meet the standard of *Strickland v. Washington*, 466 U.S. 668, 686 (1984), which provides that a defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case."

The petitioner raises the following grounds of ineffective assistance of counsel in the instant federal petition for a writ of *habeas corpus* (as stated by the petitioner *pro se*):[3]

---

[2] The first three grounds listed under this heading in the original petition are not grounds for relief, but summaries of the law regarding plain error. The court shall thus begin with the petitioner's original ground four. In addition, the court has only reproduced the first sentence of each claim (which summarize the claim), and not the lengthy discussion following each claim. This accurately summarizes the claims raised in the Mississippi Supreme Court on "Plain Error."

[3] In the interest of clarity, the court has listed all of the claims the petitioner set forth in his supporting brief, which add additional claims not contained in the petition itself. The petitioner's supporting brief also includes a claim of trial court error which is set out separately. All but one of these allegations are claims of ineffective assistance of counsel

1. Failure to investigate.

2. Failure to obtain and present mitigating evidence.

3. Failure to render the adversarial process.

4. Neglecting to adequately cross-examine.

5. Neglecting to impeach witness(es).

6. Failure to meet the confrontation[] clause.

7. Refusing to give jury instructions for defense.

8. Refusing to call expert witness in defense behalf.

9. Omitting to call certain defense witness(es).

10. Failure to have transcribed for appeal the voir dire, the opening statements, and the closing arguments of both the prosecution and defense.

11. Failure to include in the appeal transcripts of the voir dire, the opening statement, and the closing arguments, for the possible review by the court for plain error (trial error).

12. Multiple plain error.

13. Any and all other error that may be construed by this court upon review.

14. Denied Hensley his right of attendance.

Additionally, the petitioner raised the following claim of trial court error (as stated by Petitioner *pro se* on ecf document 2-1 pg. 28):

15. Hensley claims that his due process rights to an impartial jury were violated due to an instruction from the judge during jury deliberations.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all grounds on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by

the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly)

applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any of the petitioner's claims.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ineffective Assistance of Counsel

The petitioner's first fourteen claims are based upon a theory of ineffective assistance of counsel. To prove such a claim, one petitioning the federal courts for a writ of *habeas corpus* must prove both deficient performance by counsel – and actual prejudice as a result of such deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984), *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time –

without using the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must [also] overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

### Claims One and Two: Failure to Investigate Properly and Obtain and Present Mitigating Evidence

In his first allegation, the petitioner argues that counsel was ineffective in failing to investigate the case adequately. The petitioner alleges that counsel (1) made no inquiry into either of the victims' backgrounds, (2) did not subpoena an audio tape allegedly made by Detective McKenzie at the time of arrest, (3) did not investigate the circumstances surrounding a statement made by Hensley to Officer Bradley at the time of arrest, and (4) failed to use the interviews conducted by previous counsel of Susan Michelle Hensley and Victoria Elaine Hensley.

Hensley claims that had counsel investigated the victims' past he would have found that they "were prone to tales of make-believe, with vivid imaginations," had a tendency to lie, and that one of the victims, J.K., had made a similar accusation against her grandfather. The petitioner has not, however, offered evidence to show that the victims J.K. and S.L. had a tendency to lie. Indeed, the record does not support such an assertion. The petitioner cites an

interview of one of his ex-wives, Victoria Elaine Hensley, in which she stated that their daughter K.H. had accused other people of sexual abuse and had a vivid imagination. The charges against Hensley regarding the sexual abuse of K.H. were, however, severed before trial. The instant petition for a writ of *habeas corpus* is not based upon allegations that the petitioner sexually abused K.H. or a conviction based upon such allegations. As such, this issue in not before the court. These claims are merely conclusory and thus cannot support a claim for *habeas corpus* relief. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

In support of his claim that the victim J.K. had previously accused her grandfather of sexual abuse, the petitioner provided affidavits from several members of his family. These affidavits state only that when J.K. stayed at her father's house she had to sleep in the same bed as her grandfather (who slept in his underwear), and this made her uncomfortable. None of the statements allege that J.K. ever claimed that her grandfather abused her. In addition, the petitioner has presented no evidence that the other victim S.L. ever made a such a prior accusation. Thus, this claim is without merit and shall be dismissed, as counsel was effective in his decision not to pursue baseless leads.

The petitioner also claims that counsel failed to obtain and use mitigating evidence. Once again, the petitioner refers to J.K.'s prior accusation against her grandfather. However, as discussed above, according to the statements provided, J.K. did not allege that her grandfather sexually abused her.

The petitioner also holds out the affidavit of Keith McCauley, who at one time rented a room in the house where the petitioner lived with J.K. and her mother. In this affidavit, *which was executed well after trial*, McCauley states that the victim J.K. resented the petitioner's

inability to provide her with spending money – and that he had overheard J.K. state that she would be able to live with her father if she accused Hensley and her mother of abuse. McCauley, however, testified at trial *and made no mention of any such statement*. S.C.R., Vol. 2, pp. 91-98. McCauley's affidavit is simply beyond belief. Indeed, the petitioner offers no explanation for why McCauley, a close friend, would omit such a powerful exculpatory statement from his trial testimony. McCauley certainly had the opportunity to do so, as he was asked, "Did you notice anything strange or did [J.K.] act strange in any way?" S.C.R. Vol. 2, p. 98. McCauley replied, "No, sir." *Id.* He had other opportunities at trial to testify regarding J.K.'s alleged plan to accuse the petitioner of abuse, but he did not do so. When asked, "Did you ever take it upon yourself to go and talk to law enforcement or anybody about the allegations that had been made against [the petitioner]," McCauley replied, "Take it on myself? No, ma'am." S.C.R. Vol. 2, p. 96. Thus, if the court were to believe McCauley, he had been the petitioner's good friend for over fifteen years, and he knew of powerful exculpatory evidence to help his friend; however, he did not tell the police about the evidence before trial – and did not divulge the evidence during trial. Only months *after* the trial did he come forward with the affidavit the petitioner now presents to the court.

The petitioner also refers to the other affidavits attached to his petition as possible mitigating evidence. These statements contain no such evidence, but merely reiterate the claim that J.K. had made a previous accusation against her grandfather. Likewise, the petitioner proffers the health records concerning J.K.'s examination by Dr. Lance Whaley, M.D. These records, which are attached to the petition, are nearly illegible. As best as the court can discern, the report states that there was no physical evidence of vaginal penetration. Unfortunately for

the petitioner, such evidence has no relevance to this proceeding, as the trial court entered a directed verdict with regard to the charge of vaginal penetration, finding that the state had failed to prove that such penetration occurred with respect to J.K. S.C.R., Vol. 2, pp. 90-91. Thus, the petitioner was convicted of the sexual battery of J.K. as charged in Count Three of the indictment which alleged that the petitioner engaged in sexual penetration "by placing his penis in the mouth of [J.K.]" S.C.R., Vol. 1, pg. 8. The reports do not contain any information regarding oral penetration. Indeed, as oral penetration is unlikely to cause physical injury, the absence of such evidence would not affect the petitioner's conviction for sexual battery. Finally, the petitioner mentions "DPSS records," as well as mitigating factors for sentencing, but he has not attached any such records or informed the court of the factors he mentions. These claims are thus conclusory and inappropriate for federal *habeas corpus* review. *Ross*, 694 F.2d at 1012.

### Claims Three, Four, Five, and Six:
### Failure to Put the State's Case to Adversarial Testing

In claims Three, Four, Five, and Six, the petitioner alleges that counsel failed to "render the adversarial process." This claim comprises the petitioner's claims that counsel to failed to adequately cross-examine witnesses, that counsel failed to impeach witnesses, and that counsel violated the confrontation clause. Although the petitioner set forth each of these claims separately, they are all the same claim and rely on the same supporting arguments. "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *U.S. v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039 (1984). "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth

Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* n. 26.

The petitioner argues that counsel should have impeached Officer Bradley concerning the fact that he was no longer employed by the Horn Lake Police Department and had charges of embezzlement pending against him. The trial court heard arguments on the admissibility of this evidence and limited counsel's ability to cross-examine Bradley regarding the embezzlement charges. S.C.R., Vol. 2, pp. 21-25. The trial court's holding became the law of the case, and counsel merely complied with the court's order. The petitioner also claims that counsel should have cross-examined Detective McKenzie more aggressively regarding her interview of J.K. The petitioner claims that discrepancies existed between McKenzie's written report and the testimony of the victims. The petitioner also argues that counsel should have questioned McKenzie regarding the details of her interrogation of J.K. and should have reviewed the tapes of the interrogation. Unfortunately for the petitioner, he has not specified what these discrepancies were and what facts additional questioning would have uncovered. As such, these claims are mere conclusory allegations and cannot support the petitioner's claims for *habeas corpus* relief. *Ross*, *supra*.

### Claim Seven: Failure to Proffer Adequate Jury Instructions

In Claim Seven, the petitioner argues that counsel failed to proffer adequate jury instructions, although counsel proffered one instruction which was denied by the court. The petitioner argues that counsel failed to protect the petitioner's alleged right to have a jury instruction which "points to his defense." According to the petitioner, "it must be taken that trial counsel had presented no defense of Hensley during the actual trial and[,] as such[,] he had no

way to sum up a defense to the jury by and/or thr[ough] instructions." The petitioner's only defense was that he did not commit the crimes charged. Counsel used this defense at trial by discrediting the state's witnesses through cross-examination. Counsel also put the petitioner and other witnesses on the stand to prove that these crimes did not occur and that he was falsely accused. With these facts in mind, counsel's proffered jury instruction, "[t]he Court instructs the jury to find the Defendant not guilty on each count," S.C.R., Vol. 1, pg. 98, accurately presented the petitioner's defense. As such, counsel was effective for proffering this jury instruction. Other jury instructions focusing on constitutional or procedural violations might well have eroded a jury's confidence in the defense that the petitioner was indeed innocent and stood falsely accused. Counsel's strategy led to the dismissal of one count at the close of the state's proof, as well as the petitioner's acquittal of a second count. As such, it appears that counsel's presentation of the innocence defense was largely successful. Unfortunately for the petitioner, the evidence of his guilt of sexual battery convinced the jury of his guilt on that charge. In light of the degree of success of the defense of innocence (dismissal or acquittal on two of three counts), the court finds that counsel's choice of jury instructions was reasonable.

### Claims Eight and Nine: Failure to Call Various Defense Witnesses

In Claims Eight and Nine, the petitioner argues that counsel should have called Dr. Lance Whaley, M.D. as an expert witness for the defense. As previously discussed, "[c]omplaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative. [Citation omitted.] Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson,* 238 F.3d 631, 635-636 (5th Cir.

2001). The petitioner argues that Dr. Whaley, who was the physician who examined J.K., would have testified that he found no physical signs of sexual trauma and could have also testified to J.K.'s state of mind based on his observations and questions during the exam. Despite the petitioner's claim that this was the doctor's medical finding, the medical records which he has attached to the instant petition are illegible and, as such, the court cannot determine the accuracy of the petitioner's interpretation of them. The petitioner believes that this testimony "could have conceivably cleared Hensley had it been offered." There is no evidence in the record, however, which would indicate what Dr. Whaley's testimony would have actually been. For this reason, the court finds that the petitioner's assertion regarding what Dr. Whaley's testimony would be is nothing more than speculation, which the court cannot use in rendering a decision on this claim. *Sayre v. Anderson,* 238 F.3d 631, 635-636 (5th Cir. 2001).

Similarly, the petitioner argues that counsel erred in failing to call several other defense witnesses: The petitioner's ex-wife (and J.K.'s mother) Susan Kelly, Sherry Long, Laquita Huff Haggard, and Reva Blair. The petitioner claims that Susan Kelly would have testified that: (1) the dice and candy which were found together during the search of the petitioner's home had innocent uses, (2) she and the petitioner argued often, (3) the petitioner never forced her to leave the home, and (4) the doctor found no signs of penetration.

The petitioner has not, however, provided an affidavit of Susan Kelly – or any other document shedding light on what Kelly's testimony might have been. As such, this claim is speculative and is insufficient to support a claim for *habeas corpus* relief. *Sayre, supra.* In addition, the evidence in question was presented to the jury at trial. The petitioner himself took the stand and testified that the candy and the dice were packaged together because his wife Susan

Kelly had taken them with her to the hospital when she gave birth to her son a few weeks prior to the search of the home. S.C.R., Vol. 3, pg. 129. The petitioner also testified that he never directed his wife Susan to leave the house while the victims were there, S.C.R., Vol. 3, pg. 121, and that he had demanded a divorce from Susan Kelly two weeks prior to his arrest, S.C.R., Vol.3, pg. 123. Likewise, defense witness Keith McCauley testified that the petitioner had never forced Kelly out of the home. S.C.R., Vol. 2, pg. 94. Finally, defense counsel decided, as a matter of trial strategy, not to risk calling the mother of one of the victims as a witness for the defense. Considering the sensitive nature of the charges against the petitioner, would probably have led to highly emotional and sympathetic testimony from the young victim's mother. Had the victim's mother lost control and launched a tirade against the petitioner, his chances of acquittal would have been greatly reduced – even with a limiting instruction from the court. The old saying goes, "You can take the skunk out of the jury box, but you can't get rid of the stench." Calling the victim's mother as a defense witness in this case, would have been risky indeed. The court finds counsel's decision not to call her to be a reasonable one. Counsel was thus constitutionally effective in this regard.

The petitioner claims that Reva Blair would have testified that Susan Kelly had made disparaging comments about Hensley and had threatened him about what would happen if he left her. As the petitioner presented no evidence to support this contention, this claim is likewise speculative and insufficient to support a claim for *habeas corpus* relief. *Sayre, supra*.

Hensley claims that Sherry Lang and Laquita Huff Howard would have testified that J.K. had made previous accusations against her grandfather. However, for the reasons stated above, such testimony was not relevant, as the statements presented provided no proof that J.K.'s

grandfather abused her.  Further, according to the affidavit of Sherry Lang which the petitioner attached to his petition, Lang is actually Sherry Hensley-Lang, the petitioner's mother, *who testified at trial*.  S.C.R., Vol. 3, pp. 99-108.  Hensley also argues that counsel should have called his other ex-wife, Victoria Elaine Hensley, K.H.'s mother, to testify to J.K.'s prior accusation.  As discussed above, the interview of Victoria Hensley (which the petitioner has attached) contains does not contain an allegation of abuse by J.K.'s grandfather.  For these reasons, counsel was constitutionally effective for deciding not to call these witnesses.

### Claims Ten and Eleven:  Failure to Obtain the Transcripts of Voir Dire, Opening Statements, and Closing Arguments

The petitioner argues that counsel was ineffective for failing to obtain the transcription of *voir dire*, opening statements, and closing arguments of both the state and the defense.  Counsel need not have gone to the trouble and expense of obtaining a transcription of these proceedings, as no claims were raised on direct appeal referencing these portions of the trial.  Likewise, the the instant petition contains no claims referring to these parts of trial.   As such, these portions of the trial are irrelevant to the issues now before the court, and counsel was constitutionally effective in deciding not to request transcripts of those portions of trial.

### Claims Twelve and Thirteen:  Plain Error

The petitioner argues that there were several claims of plain error in his case.  In his discussion of plain error, however, the petitioner merely summarizes the allegations discussed above.  For the reasons discussed in the sections above, the court finds these claims to be without merit.  In addition, the petitioner's claim requesting the court to locate and discuss "any and all other error that may be construed" places the court in the position of an advocate for the

petitioner.  The court may not, however, advocate for either side of a case.  As such, these claims are not appropriate for federal *habeas corpus* review.

### Claim Fourteen:  Violation of "Right to Attendance"

The petitioner argues that he was denied what he refers to as his "right to attendance" when counsel did not ensure that the petitioner was present in chambers during the proffering of jury instructions.  At the beginning of trial the judge, noting that the petitioner was free on bond, informed the petitioner that he had the right to be present at any and all meetings conducted in chambers.  S.C.R., Vol. 2, pg. 16.  At that time, the trial judge told the petitioner that "[i]f we take a recess and come back here and you don't come back here, I'll assume that you've waived your right to be back here in chambers with us while we're working on your case."  S.C.R., Vol. 2, pg. 16.  The trial judge warned the petitioner that he must back in the courtroom at the time appointed by the judge because the trial would proceed as planned – with or without him.  S.C.R., Vol. 2, pg. 17.  The proffering of jury instructions took place first thing in the morning on the second day of trial, and the petitioner was not present.  S.C.R., Vol. 3, pg. 131.  The petitioner, who was free on bond, was not, however, *prevented* from being present.   Indeed, the petitioner did not present any evidence that he was somehow unaware of the time court would resume that morning.  The petitioner has not claimed that counsel did not tell him when to appear at the courthouse.  The trial court made clear to the petitioner that he was responsible for being on time for all court proceedings.  The petitioner is thus entirely responsible for his failure to appear at the proceedings in his own case.  As such, counsel was constitutionally effective in this facet of his representation of the petitioner.

### Claim Fifteen: The Trial Court Instructed the Jury Improperly After the Verdict Was Returned

The petitioner alleges a single claim of trial court error. He argues that the trial court gave an improper instruction to the jury – after the verdict was returned – an instruction the petitioner claims asked the jury to return a verdict of "guilty of sexual battery." This claim is contradicted by the record. When the jury returned with a verdict, the foreman announced that the jury had found the petitioner not guilty in Count 1 and guilty in Count 3. S.C.R., Vol. 3, pg. 136. However, Count 3 had three possible verdicts: Guilty of Sexual Batter, Guilty of Fondling, or Not Guilty of Sexual Battery or Fondling) because the jury had been instructed on the lesser included offense of fondling. S.C.R., Vol. 1, pp. 96-97. Once defense counsel pointed out the oversight, the judge addressed the jury:

> Ladies and gentlemen, on count 3 of this indictment you had three options, that is, as set forth in the indictment. I'm going to ask you to return to the jury room at this time and re-do this verdict on count 3. You had three options there, as you recall, as to count 3. Please refer to the jury instructions. Go back out, please and return another verdict.

S.C.R., Vol. 3, pg. 137. Thereafter, the jury returned the verdict of "guilty of sexual battery." *Id.* The judge did not instruct the jury to find the petitioner guilty in Count 3; instead, she directed the jury to comply with the court's jury instruction. The jury had *already* found the petitioner guilty of that count with no urging from the court. As this claim is without substantive merit.

In sum, the Mississippi Supreme Court's holding that the petitioner was not entitled to relief on any of these fifteen claims was neither contrary to nor an unreasonably application of clearly established federal law, nor was it an unreasonable finding of fact based upon the evidence presented. Therefore, *habeas corpus* review should be denied on each claim in the

instant petition. All of the petitioner's claims are thus without merit and shall be dismissed with prejudice. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 2nd day of October, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE